The appellate court of Illinois has reconvened. Thank you Mr. Clerk. You may be seated. Our second case today is case number 4150449. That is Peekle v. Lewis and for the appellate we have Samuel Heyman. Thank you. And for the appellate, David Robinson. You may proceed. May it please the court, counsel. My name is Sam Heyman. I represent the appellant, James Lewis, on behalf of the State of Illinois Defender. Of the four issues in the brief, I've directed most of my argument to the first two or three, but of course if there's questions about any of them, I'm happy to address those. First, James Lewis's conviction for threatening a public official stems from Lewis allegedly delivering a communication that would have placed Officer Welch in reasonable apprehension of bodily harm. And the state failed to prove that element of the crime, that Welch would have suffered a reasonable apprehension of harm. And we know that, first of all, because unlike most of these threatening a public official cases, Welch never testified and the state didn't even ask if he subjectively experienced a sense of fear. We also know the alleged threat was that Lewis said he knew where Welch lived, knew Welch lived there with his family, and requested that his handcuffs be removed so that he could batter Welch and Officer Steeples. Welch knew or should have known that that communication was false because in the interview room, Investigator Cade, for some reason, lied to Lewis and said that his name was Officer Welch. And Lewis gave no indication that he believed that was a lie or that he knew it was a lie. And meanwhile, Welch was monitoring the video of the interview. So he should have known that that was the case. And then we know that Lewis was handcuffed in a police station, surrounded by police officers. His threat was contingent on his handcuffs being removed. And as soon as he made that communication, the contingency became extremely unlikely to be fulfilled. And the target of the threat, Officer Welch, was the one who had the power to fulfill the contingency or not. So that distinguishes this case from Warrington and the cases the state relies on. And it just shows that Welch would have known that Lewis was blowing smoke. It was an empty threat. I want to ask you about judicial vindictiveness, Counsel. Sure. Which you allege this case shows. Was the trial judge involved in the plea bargaining in this case? It wasn't a 402, to your honor. But the negotiated plea was submitted to her. And if she was thinking about not accepting the six-year sentence, concurrent sentences on those two counts, she had a duty under the rule to admonish Lewis that she wasn't bound by what the state offered. And she never delivered that admonition. So I think it was quite clear that she was poised to accept the state's offer. So if a trial judge is prepared to accept what the state proposes and what the parties have agreed to as a potential plea agreement, but wasn't involved in it, then that's now the upper limit. If the defendant, as in this case, withdraws from the plea, the judge can't exceed what the parties agreed to in that proposed plea? No, I don't think it's the upper limit. At what point does judicial vindictiveness now apply? Give me a standard. I can't give some multiple, but I think in this case where the multiple is over four, where the ultimate sentence imposed is over four times the negotiated plea, I think that should raise an inference of vindictiveness. But, I mean, respectfully, I can't give you a- Well, what if the trial judge had the practice, as I did, that I was going to accept the guilty pleas because it wasn't my job to second-guess the parties, and I never went through the 402 admonition saying that I'm not bound by it because I believed I was, and, in fact, I think a better practice would be that trial judges always ought to be. So I'm ready to, maybe I accept it, and then suddenly the defendant moves to withdraw. Trial judges are bound in some fashion by the parties on their plea bargaining? Is that what you're suggesting? Well, I think the rule makes clear that they're not bound, even though I understand your practice and I understand the logic of your practice when you were a trial judge. But the rule says they're not bound and that, you know, they have an independent obligation to review the reasonableness of whatever- And that now affects their ultimate sentence they would impose? I think when the state is-the state has a fuller understanding of the facts than the judge at the time. When the state indicates to the judge that a given sentence is reasonable and the judge makes no indication that she finds it unreasonable- How did the judge indicate it was reasonable? Because the court was going to accept it? Correct. And that's the criteria, and, well, this is not something I like, but I guess the state is going to offer it, so I'm going to do it? Well, if it had been unreasonable on its face, she would have had an obligation to reject the offer. Why? Where does that appear to come from? She has the power under the rule to review the sentence independently for reasonableness, and if she found it unreasonable- Does the language for reasonableness appear in 402? I don't believe so. Okay. Well, when you assert judicial vindictiveness, you raise an interesting question to a bunch of judges. I don't like it unless you can back it up, and I'm finding difficulty in your backing it up. Well, I think the facts back it up, Your Honor. I mean, again, she imposed a sentence four times, a near-maximum Class X sentence, for base-level Class II conduct, you know, which the legislature has determined is reasonably punished by a sentencing rate of three to seven years. She imposes a sentence four times greater than that negotiated by the parties, and she learned nothing new from the actual- Well, this all presupposes that she was under an obligation to do something, and that the original plea agreement somehow has her judicial imprimatur. I keep on asking you, where is the source of that? I think the implication of the power to reject the plea deal indicates the- Case in Illinois, Ebersole, you mentioned about 95% of the cases resolved by plea bargaining. You think if there was some basis to this claim, some of the thousands of cases preceding this one would have so indicated, wouldn't they? And, you know, in the brief, I relied on out-of-state authority. I acknowledge that there are not on-point Illinois cases on this, but Alabama v. Smith leaves open the possibility of vindictiveness after a plea. Go ahead. I'll let you continue with your argument. So, again, Officer Welch should have known it was an empty threat. The state claims on appeal that Lewis could have, you know, spit on the officers. He could have peddled them. He could have lashed out some other way physically while he was handcuffed. But the fact is he didn't do those things. The only threat he made was something that was impossible or contingent on a condition very unlikely to be fulfilled. Just briefly on the jury instruction issue, you know, the first element of that instruction is very long. It has one mental state at the very beginning. The state says that, well, any reasonable juror would have concluded that the mental state applies to every element of the crime. As lawyers in Illinois, we know there's a statute that says that. Judges are – excuse me, jurors are laypeople. They don't know that. Again, appellate court justices have struggled in certain cases to apply that statute to other statutes. I think it's totally unrealistic to expect a jury to reach the correct conclusion. And in this case, a logical juror would have deduced, since one of the elements was broken out of the long first issue instruction, and it specified mental state, that Lewis had to know that Officer Welch was a police officer or a peace officer. By deduction, since the jury received no instruction about mental state regarding the effect of Lewis's threat, they would have concluded that they didn't have to find that a mental state applied to it, or at least not knowledge, although the state says intent was the – it's really academic because the state proved neither – or a rational juror, at least, could have found that the state proved neither knowledge. Was the instruction given the IPI instruction? It was the IPI instruction, but the IPI instruction was drafted before Alonis, which made it clear that due process requires that when the state criminalizes threats, some culpable mental state has to apply to the effect of the threat. In other words, the defendant has to know, or at least – well, Alonis left open the possibility that recklessness would suffice, but at least knowledge would apply here. Well, the instruction says knowingly. Again, it says knowingly once, and then it's followed by many elements. A rational juror would have concluded, a reasonable juror would have concluded, that knowingly applies only to the fact – the conduct. Knowingly delivered a communication – directly or indirectly a communication. Did Alonis contain the word knowingly? Alonis did not – the statute itself did not include a mental state, but I believe the jury was instructed that it had to find a mental state in regard to the conduct, but not the effect of the threat. So our position is that a jury applying common sense would deduce that the mental state did not apply to the elements that were not broken out the way that knowledge that Officer Walsh was a peace officer was. If there are no other questions on the first issue, I'd like to move on to the second issue, where we're asking this court to remand for a new trial because the state elicited the complainant's prior consistent statements, which are hearsay, contrary to the state's claim, and did not seek their admission at a pretrial 115-10 hearing. Why are they hearsay? Because they are statements containing an assertion, and the state was offering them to prove the matter asserted. The declarant is on the witness stand, on the road. Doesn't that make a difference? Well, it doesn't make a difference for whether – it makes a difference for the confrontation clause. It doesn't make a difference as to whether it's hearsay or not. It's still a non-accord statement. Well, 801C says hearsay is a statement other than one made by the declarant while testifying at the trial or hearing. Right. Offered evidence to prove the truth of the matter asserted. So she's on the witness stand testifying. She's testifying about a statement she made out of court. Therefore, it's hearsay. So hearsay is a statement other than one made by the declarant while testifying. What do they mean by that? She can relate what happened, what she saw. She can't relate what she told. So, as a for instance, I'm the victim of an armed robbery, let's say, and I'm testifying. I say – I'm asked, what happened? Guy came up to me in the parking lot of my car, pointed a gun at me and said, give me your wallet and your cell phone. I did. And then he ran off. What would he look like? He was a tall Asian guy with a ponytail. And what did you do after that? I talked to the police, drove to the police station, and I told them what happened. What did you tell them? I said I was robbed at gunpoint by a tall Asian guy with a ponytail. Right. That latter part is hearsay and there should be a defense objection and it should be sustained. That's a prior consistent statement, isn't it? Right. Are all prior consistent statements hearsay? They may all be hearsay. There may be exceptions where they would be admissible. My first question is, are all prior consistent statements hearsay? They're out of court – well, if they're not offered to prove the truth of the matter asserted, then they're not hearsay. But if they're offered for the truth of the matter asserted – Well, the description I just described is my statement offered to prove the matter asserted. Right, so that's hearsay. Correct. Well, as a matter of fact, in a prior consistent statement, if I've already testified to the same thing, the Supreme Court has talked about it. I'm just trying to – it's improper bolstering. These have just said the same thing twice. Right. Has the Supreme Court of Illinois ever deemed that second story always hearsay? Well, I don't know about the direct answer to that question, but I know that in a very similar context in terms of course of investigation, the Supreme Court has made it clear often that a witness – a declarant can testify to the fact that a conversation happened just to fill in narrative, but when the declarant gets into the facts of what their prior assertions contained, that is hearsay, and it's either improper bolstering or it's – well, it's just improper, inadmissible hearsay. So it's – what about the element of offered in evidence to prove the truth of the matter asserted? For instance, my hypothetical. I just said I was robbed by a tall Asian guy with a ponytail. Right. Now I'm offering it to prove the truth of the matter asserted when I'm being asked – or the state is when I'm being asked this question, would you tell the cops? Right. That's certainly to prove the truth of the matter that you were robbed by a tall Asian man with a ponytail. But then all prior consistent statements would have to be hearsay. I don't disagree. Do you – is that what you think Illinois case law says? If they're offered to prove the truth of the matter asserted, they are hearsay. Why don't we have all this discussion about prior consistent statements that are all hearsay? Why don't we just talk about hearsays that are admissible? I mean, that is our position. It was hearsay and it was inadmissible unless it followed the statutory requirements of 115-10, which is a very specific statute that directly applies to, quote, testimony by the victim of an unaccurate statement being made by the victim of a miscompliance of such act. Well, the reason I ask that is we've got a special rule in Illinois, evidence of prior consistent statements of witnesses. If it's all hearsay, why do we need a special rule? I'm not entirely sure. I mean, we have an even more specific statute that applies to the exact situation here, though. And the statements at issue – What was the basis, by the way, of the underlying charge in this case? What specific acts did the indictment say the defendant did with regard to the charge? I believe it said she – well, the state believed, and apparently the defense counsel believed, that she had to make – that he made contact with her anus, although they didn't actually have to prove that under the law. What did the charge say? I don't recall. Isn't that important? If you look at the statute, all the state had to prove for a child of this age was contact with any part of her body for the purpose of sexual gratification. So – For aggravated criminal sexual abuse, that was the charge? Correct. And because she was under 13, there was contact with any part of her body for sexual gratification? Correct. How was it argued at trial? The defense counsel and the state both argued that the state had proved contact with her anus, which the state apparently believed it had to prove. Well, and that's how the jury was instructed, wasn't it? Correct. And that's why I didn't raise – I had a hard time proving prejudice. I mean, I could have screwed up, certainly. So the state argued that they had to prove more than the statute required them to have to prove. Right. And they – apparently a jury concluded that they had, although if the statute actually required that, I would have raised reasonable doubt, because I don't know how a rational jury could have concluded that based on KB's testimony. But the fact is, all they had to prove was contact under the statute. So if the extent of the evidence was, let's say, he touched my butt, he touched her rear end, as opposed to touching her anus. Right. Your understanding of the statute, that would have been sufficient. That's my understanding, yes, and that's why. Was that – I'm just curious about the nature of the charge. It's not a bill of particulars, but did the charge itself talk about touching her rear end or buttocks, as opposed to her anus, you don't recall? I don't recall. I'd be happy, obviously, to file a supplemental addressing it if you'd like. But, yeah, I don't recall. But in any case, so there should be a whole new trial, because the state repeatedly elicits these statements. And, you know, page 22, she says, I told my dad that my bottom hurt. It's an assertion of fact, offered to prove the truth. And the defense objected at that point. And it was overruled, erroneously. The prosecutor says, you can tell us what you said. She says, my bottom hurt. She says the same thing in regard to her mom on the same page. Then page 23 and 25, she says, we told the police what happened. Then a redirect, the prosecutor asks, are you telling the truth today? She says, yes. And this is what you've told me before, correct? Yes. So the state is implying not only – So is there any objection to that last question? No, there was not. Is that important? Well, it means that this court has – I mean, the post-trial motion didn't preserve these anyway. Well, had there been a 11510 hearing and had the court, let's say, approved all this testimony coming in, then what would that mean about the prosecutor's question? Have you told – what was that question again? And this is what you've told me before, correct? That wouldn't make any difference to that question, would it? Well, I mean, the jury would be able to evaluate those statements on their own. And, you know, the state – I think it's telling the state didn't call the mother – didn't even want a 11510 hearing, not just for KB's statements, but also for the mom and the dad and maybe police officers, which would have been probably allowable since KB did testify. There wasn't a confrontation clause issue. I think it's telling that they didn't feel confident enough in their own case to present those statements that she made out of court, which they had the right to under 11510 after a hearing. So I think we've covered the fact that this is hearsay. We're asking that you remain for a full new trial and not simply a reliability hearing, though, because the jury was not instructed pursuant to the statute, as the statute required, about how to evaluate the statements that it did hear. So I don't know how you could hold that these were harmless errors, even if they were admissible after a hearing, because the jury was not instructed about how to evaluate them. If there's no questions about that, other questions about the 11510 issue, I'd like to just briefly mention the crankle thing. Supreme Court case errors just very recently made it clearer than ever that all a defendant has to do is make a bare assertion of ineffective assistance of counsel, and that triggers the crankle inquiry. In this case, James Lewis did more than that. He laid out the factual basis for a claim, and the trial court simply ignored it. It's a minimist issue. Counsel, you're out of time. I'm sorry? But you will have rebuttal. Yes, thank you. State's very confident in its case. It's a case in which Judge Fahey heard evidence from a six-year-old girl about crimes committed when she was five years old, wherein the defendant lured kids from across the street to his house with puppies, and then engaged in what we refer to in Illinois as aggravated criminal sexual abuse. Let me ask you the same questions I asked Mr. Hayman. What did the charge in this case specifically say? Your Honor, I'm embarrassed to say I don't know, and I don't have it in front of me, and I'm embarrassed to say that because this was a case that was prepared by a staff attorney in our office, and due to a conflict today, I'm here, and I've spent the last week or so trying to prepare, and so I don't want to make a representation about what the charge said. So you heard Mr. Hayman's representations from the nature of the charge. The State seemed to be arguing that it was under a burden to prove more than it needed to. Occasionally, having done some trial work myself, I know that sometimes you fall into the rabbit hole of proving more than you have to. None of that matters here, however, Your Honor. This goes to the point I was going to make about 115-10. I think what is happening is we're talking in circles about what the law requires, and what is hearsay, and what is a prior statement. I think one of the things that I love about the law, and in particular I love about the law in Illinois, is that, in fact, juries are instructed at every trial about using common sense. And the thing that I didn't hear in the opening presentation this morning was anything about the context. And the context here is that this is a six-year-old witness testifying about what happened when she was five years old. So unless we're going to give Defendant's carte blanche to commit crimes against kids under the age of six, seven years old. I'm sure you were not going to do that. But common sense, to me, would be for the state to conduct a 115-10 hearing. To me, that is the most commonsensical thing that could have occurred in this case. Why would the state not want to do that? I'm following up on Justice Flinner's question. That's the question I'm wondering about, and I can't understand it. Because it was unnecessary, and I'll explain why. This is why I wanted to start with this. You have to look closely at the actual statements that were admitted. I will be the first to admit in reviewing this at first blush, I thought, some of the questions asked by the prosecutor were probably a little bit odd or oddly framed to elicit a response. But again, it goes back to context. Here's what she testified to, that she indicated to her mother and father that her bottom hurt. Now, if you go to 115-10A1, this is what it says. Testimony by the victim of an out-of-court statement made by the victim that he or she complained of such an act to another. This is not the act. The act is the touching of the anus, or the improper touching under the statute. What she relayed to her parents was that her bottom hurt. It was not the act. Now, that may be dancing on the head of... What's the relevancy of her bottom hurting? It's the same relevance. It's why the parents did what they did. The irony here is, if they had called the police officer to testify about why the police officer engaged in an investigation and went to this person's house and said, none of this would be an issue at all. But in fact, they actually called the person, the six-year-old, that had the actual knowledge of it. And the way that she framed it might have been improper, as we generally see it if a 35-year-old woman was testifying. This is a six-year-old. If they would have called the police officer to testify, well, why did you go to the house? Well, the parents had called and they indicated that when they were giving their daughter a bath, her bottom hurt. And then what did you do? Well, I didn't really do anything until they arrived, because I told them to come down to the station. And here's the other statement that they complain about, that the three of them, the child, the mother, and father, then went to the police station to tell them about what the daughter had told them. If the police officer had testified to that, we wouldn't be here, because we do that in almost every case to establish a foundation. Essentially, what they did here was they asked this six-year-old girl to explain, how did we get here, sweetheart? That's the sort of comfort level that the legislature envisions in a trial like this. And this is precisely why they come up with statutes like the certain hearsay statements provision in 115-10. So why not use it? I was just about to get there, Your Honor. All right. This goes back to, and if you look at page 24 of the state's brief, this is precisely what we point out in Bowen. 115-10 is designed for detailed corroborative evidence of a child's complaint about an incident to another. That's not what was presented here. If you change the facts in this case, I would concede, yeah, that's probably a problem. We should have had a 115-10 hearing. And those facts would be, if she said, well, I told my dad at the time that he put his finger on my anus and took photographs and so on and so forth. That's not what they're complaining about here. They're complaining about the fact that she's establishing the foundation for why the parents did what they did and why the police did what they did. It's not even hearsay. It's not even the type of hearsay or problem that's envisioned by the legislature or the Supreme Court in its rules. It just is not the type of hearsay that we have to deal with. But in any event, even if this Court were to say, this is a complicated set of facts. We shouldn't be establishing the law on 115-10 based on the testimony of a six-year-old. None of it matters anyway. Because had they had a 115-10 hearing, all of this evidence would have come in and probably more. The defendant, quite frankly, probably benefited from the fact that there wasn't a 115-10 hearing. Because if they'd have had one, they would have brought it all in. The judge would have heard it all. The judge would have said, okay, here are the specific parameters of what you can present based on 115-10. And which are the specific acts that were relayed to another. As this Court well knows, the whole point of 115-10 is that when you have kids between the ages of 5, 8, 10 years old, and they go tell someone, a counselor, police officer, their mother and father, about the details of a criminal sexual abuse or assault, then that evidence can come in so long as they're available for cross-examination. That's the whole point of 115-10. I understand that, counsel, and I agree with you. So why not use it? That is really the problem here. And you say if they had had the 115-10, the defense would have been more thoughtful. There was no instruction here given. That's also a problem. 115-10 requires that. Don't execute justice at the expense of perfection. Would it be perfect to go back in time and have a 115-10 hearing and provide this jury with a limiting instruction on what? That you can't use that her bottom hurt, or if they had objected appropriately at the time, that the state's attorney or assistant state's attorney could have rephrased the question and said, don't tell me what you told your dad. What did you feel? And she would have said, my bottom hurt. What's the difference? We're talking about, again, this is all context. I don't believe. She testified, right? Yes, Your Honor. What did she say when she testified? I'm sort of stuck in the same trick box. I don't want to make a misrepresentation. Not much. From what I've reviewed, she did not testify too much. But my point is, if they had objected on this specific point about the wording, the assistant state's attorney would have done what I would do as a prosecutor and say, judge, I'll withdraw and I'll rephrase. What did you feel when you were taking a bath that night? Do you remember? And she would have testified to the same thing. So this is much ado about nothing, quite frankly. She testifies that her bottom hurt and that's why her parents did what they did. Then they all went down to the police station. But they would have you believe that this is the only evidence that was presented. It wasn't. It's the totality of circumstances. There's evidence presented that this is how the kids got to the house. He's got puppies. She has to use the bathroom. They go up to the bathroom. He tells her to take her pants down. She's taking photographs of the pants. He touches her on the bottom. So on and so forth. It's a totality of circumstances. I mean, you can't look at these statements in a vacuum and say, well, Let me ask this question. If I remember correctly, the father, KB's father, explained that they were giving a bath to KB the night after this happened. And she said her butt hurt then? I believe it was her bottom hurt. Her bottom hurt. She testified to that, I believe. Did she not? Yes, Your Honor. Okay. So then the next day, the father and his wife took her to the police station and then to the emergency room the next morning. Did they explain? Was there anything about what KB told them to explain why they did that? I can't recall the testimony precisely. And to be specific, my concern is, was there some hearsay here that was not testified to by KB? In other words, did KB tell her parents the next day, my bottom still hurts or words to that effect, which is why they took her to the police station the next morning and to the hospital? I just don't know the answer to that question. That's what I'm trying to wonder about. I apologize. Mr. Heyman. But, again, the point of the objection here should have been something like, if they want to object to hearsay, fine. It's their prerogative to object the way they want to. But, frankly, what he's really objecting to here is a narrative. He's objecting that this girl, as in the example that Justice Steigman gave earlier about the suspect in the armed robbery, is saying, here's why we did what we did. But instead of the father or the police presenting that narrative, she's presenting it. And she's there. If they want to cross-examine her and say, did your butt really hurt? They can do that. But they didn't do that because no defense attorney in their right mind is going to cross-examine a 6-year-old girl like that for fear that she's going to say, yeah, I did. And I understand it's the state's burden to prove, but they did, given the totality of circumstances. And you can't say, one thing that strikes me is that you can't say that this jury was unreasonable. It's my recollection that they acquitted him of a charge in this case. So it's not as if this jury just looked at this and was unbridled without instruction and threw the book at this guy in terms of convictions because they just thought he was a bad guy or they felt some sympathy for the child. That just wasn't the case. And, you know, without sounding too dramatic, I don't want to sit down until your honors are convinced at that point or my time expires, whichever one comes first. So I don't want to leave the 115-10... Let me ask you this to address the specific... I think I have an idea, but you and Mr. Heyman have better ones. The specific statements of KB that he says should have been subject to a 115-10 analysis, the state did not do that and that were improper. That's what I led with, which is that her bottom hurt, that that's what she told her dad, and that the three of them went to the police station together. Those are the statements. Are there any others that he cited as being improper under 115-10? I reviewed his brief this morning. Those are the statements that they're complaining about. Now, there are collateral issues related to 115-10, where he's complaining that the framing of the state's attorney's question was improper, as it would elicit these responses. But as to the statements proper under 115-10, the statements, in other words, that would have been the subject of 115-10, that's it. And that's my point. I go back to subsection A1, the complaint of such an act to another. What this legislature is contemplating here is her articulating to someone, a parent, a police officer, someone from the CAC, the CAC representative, that here's what he did, and she pointed out to me on this teddy bear that this is where she was hurt. That's what they're contemplating, and that if she testifies to that, she can't do that unless and until you have a 115-10 hearing and then a subsequent limiting instruction. None of that was required here. I just think, would it have been a better practice to ferret all this out? Yeah, maybe so, but. Well, let me see if I understand your argument. Looking at the statute 115-10A1, which Mr. Hayman says is violated in this instance, it refers to testimony by the victim of an out-of-court statement made by the victim that he or she complained of such an act to another. So if I understand your argument is she said nothing about the defendant or any act of the defendant. What she said is, my butt hurt. That's correct. Now, could that have been because she had a really bad rash? She fell on the monkey bars? Who knows, but the point in this context is it's showing that she. . . Counsel, seriously, it can only be relevant if they're trying to show that the act occurred. Respectfully, I disagree, Your Honor. Okay, why? It is relevant because it shows why the parents did what they did. Why they got to where they got in the investigation. Why they went to the police station. There's more than one reason it would be relevant. Why is that there? Because otherwise the defendant is going to stand up there, and even after sentencing the defendant is up there by their own admission saying, I have witnesses. This never happened. I never did this. That's his defense here. I didn't do this. So if that's his defense, it's totally inexplicable otherwise why the police show up at his house after he was a good Samaritan showing little kids in the neighborhood puppies. And just because there's some collateral benefit to the state, namely that the jury uses common sense and puts together the fact that, oh, yeah, well, that's why your bottom hurt based on the totality of evidence presented. I'm not troubled by this at all. Well, let me ask it a different way. From the viewpoint of the defense, what are the statements of KB that she testified to or that any other person testified to of her statements that were only admissible according to the defendant under 115-10 and that you say don't apply? That's kind of a limited question, maybe. What are we talking about here? That is, what other statements of hers were admitted? Again, I apologize, Your Honor, but I don't want to misrepresent based on the notes I've reviewed because, and I see I'm limited on time, but I will leave that to Mr. Hayman. I trust his judgment. I've worked with him before. Well, she said, for instance, her butthurt. Correct. She said she told her parents her butthurt. Did she not? Correct. Okay. And that's one of the things. That her bottom hurt. That her bottom hurt. I keep on misstating that. Thank you. That her bottom hurt. And it's your position that that's not covered by 115-10 anyway. It's whether that was done or not that comes in. What other statements did she make? Or did anyone else testify that she made to them? I apologize, Your Honor. Again, I'm embarrassed to say that I don't want to make a misrepresentation. I'm relying on notes, not the transcript. Mr. Rogers, would you agree that based upon the jury instructions given to the jury, that the state had to prove beyond a reasonable doubt that the defendant touched KB's anus? Yes, and I believe they did. Because in Illinois we allow common sense and reasonable inferences by a jury. We don't have to have a medical doctor come in and a forensic video person say, we've extracted evidence showing him touching her anus. But arguably, Justice Turner's question makes the point, isn't the question of potential prejudice the greater because the state put an additional burden on itself that it didn't need to. But by doing that, now the question about did it hurt, did her anus hurt, et cetera, is now at issue. It is. But frankly, that's part of the reason that I'm less troubled by this. I see my time's expired. May I finish? That I'm less troubled by this. I mean, this is a case where this is a reasonable, rational jury that got it based on the totality of circumstances. Should this Assistant State's Attorney have done a better job and been more prepared, probably more prepared than I was today to answer questions? Sure. But I'm not troubled by this because of, and again, this is dancing on the head of a pin when you're looking at 115-10. But they're the one making the technical arguments. And this is precisely why I find it so compelling that there was no objection made to the State's Attorney's question. Because if there was, this is just the kind of thing that you could have gotten into, and that's what forfeiture is all about. And in closing, I'd just be remiss in saying that there's no part of this in terms of sentencing that strikes me as vindictive. I agree with Justice Steigman. And on the other points, if there's any other questions, I'm happy to answer them. Thank you very much for your argument. Is there any rebuttal? Okay. The State claims that, you know, this didn't really matter because the only substance that was contained in her out-of-court statement was the fact that rebuttal occurred. But the State's theory of the case, which they advanced in closing argument and also in redirect of KB, was that she had been consistent with much more than the mere fact that her bottom hurt. You know, in closing argument, the State's Attorney argued that she – Well, the consistent, as we discussed before, wasn't objected to. You're arguing that through the question constituted in plain error. I don't think you made that argument, did you? I made it in the brief. I mean, the State does not – The question alone, now, is this consistent with what you told me is enough? The question – plain error occurred here. The State just denies there was error in their briefs. They don't make a plain error argument. The only – there's no way to construe the facts of this case as anything other than closely balanced because, as the State acknowledges, it was based solely on the statements of a 6-year-old child. Their case was based solely on that, who was 5 at the time of the alleged incident. And I just want to talk – you know, the State acts like 115-10. Its sole purpose is to allow the State to bring in extra evidence to make it easier to prosecute child sex abuse cases. And that's not true. It has dual purposes. One is to allow the State to bring in those prior statements because it's tough to prosecute child sex cases. But the other is to ensure the reliability of those statements that come in. And here there was no hearing because, again, because it seems that the State was not confident in whatever out-of-court statements they would have been able to bring in. And – Well, I want to be real – I asked – and I apologize, Counsel. I asked Mr. Robinson this. And I want to be real clear exactly to have you identify the particular statements of KB that you believe were improperly admitted. You referred to the one where you're saying that she testified her bottom hurt and she told her parents that her bottom hurt. Right. That you say was improper. Right. Now, what about his argument that, wait a minute, that's not a complaint of such an act? Well, as Justice Turner pointed out, it would be irrelevant to – That's a different issue, isn't it? I mean, the statute speaks of if you want to get in a complaint of such act by the victim, then you have to use the statute. Whether it's relevant or not is a different question of whether the statute applies. My question is – Mr. Robinson – To say my butt hurt or my bottom hurt doesn't necessarily – that's not the complaint of an act of another, is it? Well, Mr. Robinson, you several times mentioned dancing on the head of a pin. Forgive me if I misconstrued that, but this would truly be dancing on the head of a pin. The import of what she's saying is clear. She says, Tank touched my bottom or pulled down my pants, touched my bottom. And the very next question or maybe two questions later is, what did you tell your dad? My bottom hurt. Did she tell her dad, for instance, that Hank pulled down my pants and touched my bottom? Well, I think the implication of the jury is clear that she – Is that my question, counsel? No, she did not literally say that. What other statements that you identified that she told her parents or anybody else fall under 115-10 or should have? She never testifies at trial that she said – she told someone out of court that Tank is the one who did it. She did not do that. But, again, the state made their whole theory that she'd been – they bolstered her, repeated them. My question is, what specific statements did she make to third parties? She complained about her bottom hurting. Was there anything else? Those were it. But those, we contend, are explicitly covered by 115-10. The statute could not be cleared, and a hearing was required. And Mr. Robbins said – So no one else testified to any other statements that KB made to them? Well, the father made a statement, said that KB told him she had been touched. That was objected to, and that objection was sustained, but there was no period of instruction. Then on page 83, to address the question you asked Mr. Robinson, the father said she was still complaining about her bottom hurting, and that's why they took her to the hospital the next day. There was no objection to that question. So she was still complaining about a bottom hurting the next day. Correct. And KB never testified to that when she was asked? Correct. Was there any objection made to her bottom hurting the next day? There was no objection made to that, and the state argued that extensively in closing argument. Would that be inadmissible under the statute? Yes, although obviously it was forfeited. But for the reason stated in the brief, we believe it was plain air. Time is up, but I'm anxious about this whole business to identify the distinction that Mr. Robinson has addressed between a testimony by the victim of an out-of-court statement made by the victim that he or she complained of such act to another as opposed to the point he makes about the effect of the result. My bottom hurt. Why isn't that? What is your position as to why that's not legitimate? Because it would be unreasonable parsing to claim that. It was crystal clear to the jury that that statement really meant Tank is the one who made my bottom hurt, and that is obviously an assertion of fact. It's the ultimate issue in the case. It was the disputed issue in the case. Well, you're arguing as if the statement was, my bottom hurt because of what Tank did to me. Right. And she didn't say that. She's a six-year-old child. She didn't say that, but isn't that in fact what she needs to say in order for your argument to work? No. I mean, again, I think especially as the state relies on that as their theory. So the statute, you're reading it as a testimony by the victim. I'll, of course, say it was made by the victim that she or she complained of such act to another or the effects of that act. I think that's a reasonable extension in this case, just based on the facts of this case and the state's theory. We'd have to extend the statute to so hold, wouldn't we? I think you'd have to construe the statute reasonably. Okay. Thank you, Your Honor. The case is submitted. The court stands in recess. Remaining cases. Thank you.